## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VIRGINIA J.[1]**, | Case No. 1:21-cv-1542-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie Taylor, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Frederick D. Fripps, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Virginia J. appeals the decision of the Commissioner of the Social Security

Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

(DIB) under Title II of the Social Security Act (Act), and Supplemental Security Income (SSI)

under Title XVI of the Act. The Commissioner denied Plaintiff's benefits at step five of the five-

step sequential process to determine disability. After evaluating the decision of the

Administrative Law Judge (ALJ), the Court reverses and remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec.*

*Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039

(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must

uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a

rational reading of the record, and this Court may not substitute its judgment for that of the

Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th

Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625,

630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a

ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff applied for DIB and SSI on November 15, 2018. AR 83, 84. Plaintiff alleged a disability onset of January 1, 2010. AR 200, 209. Plaintiff was 32 years old at the time of her alleged onset date. AR 209. A decade before the alleged onset date Plaintiff worked as an in-home caregiver and as a certified nurse assistant. AR 282. Plaintiff has not worked since the alleged onset date, but she volunteered occasionally at the childcare center of her local YMCA. *Id.*; AR 64. Plaintiff testified that her ability to work was limited by her "lower back condition . . . because [her] pain is so bad that [she] can't stand for longer than 10 minutes." AR 271. Plaintiff also testified to knee pain, right shoulder pain, and carpal tunnel syndrome in both wrists. AR 57-58.

The Commissioner denied Plaintiff's claims initially and upon reconsideration. AR 137-46, 148-53. ALJ Diane Davis heard Plaintiff's case via telephone hearing on November 18, 2020. AR 45, 47. ALJ Davis issued a decision dated March 1, 2021, concluding that Plaintiff was not disabled. AR 38-39. Plaintiff appealed, and the Appeals Council denied review on September 7, 2021, making ALJ Davis's decision the final decision of the Commissioner. AR 1. Plaintiff appeals that decision to this Court.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

PAGE 4 – OPINION AND ORDER

5.       Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status of the Act through September 30, 2010. AR 26. The ALJ then applied the five-step sequential process to determine whether Plaintiff was disabled. AR 26-38. At step one of the sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of January 1, 2010. AR 26. At step two of Plaintiff's DIB claim, the ALJ determined that Plaintiff had no medically determinable, severe impairments from the alleged onset date through her date last insured, September 30, 2010. AR 26-27. The ALJ thus

denied Plaintiff's DIB claim. AR 38. At step two of Plaintiff's SSI claim, the ALJ determined

that Plaintiff suffered from the following severe impairments: degenerative disc disease of the

lumbar spine; degenerative joint disease in the acromioclavicular joint of the right, non-dominant

shoulder; degenerative joint disease of the bilateral knees; bilateral carpal tunnel syndrome; right

ulnar neuropathy; and morbid obesity. AR 27.

At step three, the ALJ concluded that Plaintiff did not have an impairment or

combination of impairments that met or equaled any of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1. AR 29-30. Because the ALJ found no impairment qualifying

Plaintiff as disabled, the ALJ assessed Plaintiff's RFC before moving to step four of the

sequential analysis. AR 30-37. The ALJ found that Plaintiff could perform a range of light work,

with the following limitations:

> [Plaintiff] can lift and/or carry twenty pounds occasionally and ten
> pounds frequently. [She] can stand and/or walk for about four
> hours total in an eight-hour workday, and sit for about six hours
> total in an eight-hour workday. She can frequently stoop. She can
> occasionally kneel, crouch, crawl, and climb. [Plaintiff] can
> tolerate frequent exposure to vibration and can have occasional
> exposure to unprotected heights and operating heavy machinery.
> [Plaintiff] can occasionally reach overhead with her right, non-
> dominant upper extremity. She can frequently handle and finger
> bilaterally.

AR 30.

At step four, the ALJ found that Plaintiff had no past relevant work. AR 37. At step five,

the ALJ considered Plaintiff's age, education, work experience, RFC, and the opinion of a

vocational expert. AR 37-38. The ALJ then determined Plaintiff could perform jobs existing in

significant numbers in the national economy. *Id*. The ALJ therefore concluded that Plaintiff was

not disabled from her alleged onset date through March 1, 2021, the date of the ALJ's decision.

AR 38-39.

**DISCUSSION**

Plaintiff argues that the ALJ erred in discounting her subjective symptom testimony and rejecting lay witness testimony. Plaintiff also argues that new evidence that she submitted to the Appeals Council after the ALJ's decision shows that the ALJ's decision is not supported by substantial evidence. Each alleged error is addressed in turn.

**A.  Plaintiff's Subjective Symptom Testimony**

**1.  Standards**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements

are with the claimant's statements about his or her symptoms and other evidence in the file. *See*

*id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*

*v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however,

discount testimony "solely because" the claimant's symptom testimony "is not substantiated

affirmatively by objective medical evidence." *Robbins*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2.   The ALJ's Evaluation of Plaintiff's Testimony

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the

alleged symptoms. AR 32. The ALJ, however, discounted the severity of Plaintiff's alleged

symptoms because they were "not entirely consistent with the medical evidence and other

evidence in the record." *Id*. The ALJ discounted Plaintiff's testimony about her symptom-derived

limitations because her daily living activities were inconsistent with her claimed limitations, she

improved with treatment, and her testimony was not supported by the objective medical

evidence. The Court addresses each reason in turn.

#### a.   Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the

plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639.

For daily activities to discount subjective symptom testimony, the activities do not need to be

equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a

totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be

utterly incapacitated to receive disability benefits, and completion of certain routine activities is

insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a

"claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ rejected Plaintiff's testimony in part because Plaintiff's "activities of daily living [were] . . . inconsistent with her alleged degree of limitation." AR 34. Activities referenced by the ALJ included: a car ride that Plaintiff took with her friends to the mountains, Plaintiff's exercise routine of swimming and walking, and Plaintiff's volunteer hours at her gym's childcare center. *Id*.

To begin, that Plaintiff "went up a mountain with friends and [their vehicle] hit potholes," AR 2403, is not inherently inconsistent with any of Plaintiff's testimony about her symptoms. Sitting in the passenger seat of a vehicle does not require one to stand longer than ten minutes or walk more than a block without rest. And although Plaintiff testified to a generalized difficulty sitting, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This is especially relevant here because the activity the ALJ cited as inconsistent with Plaintiff's testimony was singular and isolated. *See Juston C. v. Comm'r of Soc. Sec.*, 2021 WL 1187054, at *3 (D. Or.

Mar. 29, 2021) (finding that it was error for the ALJ to "point[] to isolated instances of improvement in concluding [the] [p]laintiff did not suffer significant symptoms from headaches"). The ALJ erred in citing Plaintiff's outing as evidence that her symptom testimony conflicted with her apparent functionality.

Next, the ALJ cited Plaintiff's exercise routine as inconsistent with her alleged degree of limitation. Plaintiff testified to swimming up to six days a week and doing other low-impact exercises, like walking around her gym two to three days per week. AR 275; *see also* 1731 (treatment records noting that Plaintiff began to walk around the local YMCA). Plaintiff was working to lose weight because her doctor required a certain amount of weight loss before Plaintiff could have surgery to replace both of her knees. AR 59; *see also* 1731 ("[Plaintiff] will also need to lose weight to lower her surgical risk."). The Ninth Circuit has made clear that

> activities such as walking . . . and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.

*Vertigan*, 260 F.3d at 1050 (emphasis in original). Plaintiff swims and walks to qualify for surgery to replace both of her knees, and she should not be penalized for taking what action she can, consistent with her stated limitations, to further her treatment. Despite her pain, Plaintiff maintains an exercise routine for therapeutic purposes, and this does not undermine her testimony about the severity of her overall impairments. *See id*. ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as . . . *limited walking for exercise*, does not in any way detract from her credibility as to her overall disability." (emphasis added)).

Finally, the ALJ cited Plaintiff's volunteer hours at her gym's childcare center as inconsistent with her symptom testimony. At the childcare center, Plaintiff watched children that

were up to three years old while their parents exercised. AR 65. During her volunteer hours, Plaintiff "did a lot of sitting on the floor or in a chair because [she] wasn't . . . stable enough with balance to hold a child standing up." *Id*. Indeed, at one point, Plaintiff "did lose her balance with a six-month-old in [her] hands." AR 66. Her boss then required her to sit when holding children for Plaintiff's safety and the safety of the children. *Id*. Plaintiff testified that she could only stand for up to ten minutes and could only sit for up to half an hour before getting stiff and needing to get up and walk around. AR 67. Her volunteer hours are consistent with this testimony. At the childcare center, Plaintiff was not required to stand for extended periods; in fact, Plaintiff was required to sit while holding children for her safety. The information contained in the record about Plaintiff's volunteering does not constitute a clear and convincing reason supported by substantial evidence to disregard her testimony.

### b.  Improvement with Treatment

In summarizing the medical evidence that the ALJ found inconsistent with Plaintiff's claimed limitations, the ALJ mentioned some purported improvement. Although not a clearly articulated reason given by the ALJ, the Court can reasonably discern the ALJ's reasoning and thus considers this as an independent reason provided by the ALJ. *Cf. Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester*

*v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Considered within Plaintiff's overall diagnostic picture, her symptom improvement does not provide a clear and convincing reason to discount her symptom testimony. For example, although Plaintiff testifies that cortisone shots in her knee provided her with three months of relief, she only gets the shots every four months and her doctors have "advis[ed] [her] that the cortisone shots . . . are going to . . . keep causing more damage." AR 59. The ALJ also noted that Plaintiff stated that she "she was getting good relief with massage therapy and chiropractic care" in October 2019. AR 30 (citing AR 1733). The ALJ, however, immediately thereafter noted Plaintiff's back surgery in October 2020, which belies any lasting improvement from massage or chiropractic care. Regarding Plaintiff's back surgery, which was heavily relied on by the Commissioner in arguing that this is a valid reason given by the ALJ, Plaintiff's hearing was one month after her back surgery, so whether she had lasting improvement from her surgery was not yet known. Further, the new evidence from Plaintiff's treating provider, Angela Marcucilli, FNP-C, which acknowledges that Plaintiff had surgery but opines as to her continued impairments, contradicts the Commissioner's claim that Plaintiff's surgery provided lasting improvement. AR 16-17.

### c. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as only a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester*, 81 F.3d at 834); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)

(noting that the Commissioner "will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate

your statements"). Here, even if the objective medical evidence does not support Plaintiff's

claimed limitations, that alone cannot provide a clear and convincing reason to discount her

testimony.

## B.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness

testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053

(9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment

affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony

without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's

testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack

of support from the 'overall medical evidence' is . . . not a proper basis for disregarding [lay

witness] observations. The fact that lay testimony and third-party function reports may offer a

different perspective than medical records alone is precisely why such evidence is valuable at a

hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing

cases and concluding: "A lack of support from medical records is not a germane reason to give

'little weight' to those observations.").

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony,

either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v.

Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must

determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's husband Peter C. completed a Third-Party Function Report on behalf of Plaintiff's DIB and SSI claims. AR 263-70. The ALJ did not give any consideration to this testimony in her written opinion. The Commissioner argues that this was not an error because the ALJ no longer needs to explain why he or she has discounted nonmedical lay testimony under the new regulations. The Commissioner relies on revised regulations describing how to evaluate *medical opinion* testimony. *See* 20 C.F.R. §§ 404.1520c; 416.920c. These regulations state that the evaluation of *nonmedical* testimony does not have to apply the standards for medical opinion testimony, but these regulations do not set out the standard for nonmedical opinion testimony. 20 C.F.R. §§ 404.1520c(d); 416.920c(d). The standard for nonmedical opinion testimony has previously been established by the courts and did not need to be explained in a regulation changing how *medical testimony* was to be evaluated. The Court has repeatedly found the Commissioner's argument unpersuasive. *See, e.g.*, *John H. v. Kijakazi*, 2022 WL 8035418, at *8 (D. Or. Oct. 14, 2022) ("[T]he new regulations are . . .insufficient to overrule binding Ninth

Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it.)"; *see also Dale M. v. Kijakazi*, 2023 WL 1815530, at *10 (D. Or. Feb. 8, 2023). The Court finds it unpersuasive here for the same reasons.

The Commissioner also argues that any error the ALJ committed in failing to address the lay witness's submissions was harmless because the lay testimonies identified no limitation not already accounted for in Plaintiff's symptom testimony. Thus, argues the Commissioner, the Court can discount the lay testimony for the same reasons the ALJ rejected Plaintiff's testimony. Because the Court rejects the ALJ's reasons for discounting Plaintiff's testimony, those reasons do not provide a basis to discount the lay testimony. Therefore, the ALJ committed harmful error in discounting lay witness testimony.

## C.  New Evidence

After the ALJ's decision, Plaintiff submitted a Treating Source Statement dated June 30, 2021, from her treating provider Angela Marcucilli, FNP-C, for the Appeals Council to consider. AR 15-19. The Appeals Council did not consider FNP Marcucilli's statement. AR 2. The Appeals Council asserted that because the ALJ decided Plaintiff's case through March 1, 2021, and FNP Marcucilli's statement was dated June 30, 2021, "[FNP Marcucilli's statement did] not affect the decision made about whether [Plaintiff was] disabled beginning on or before March 1, 2021." *Id*. Plaintiff argues that FNP Marcucilli began treating Plaintiff well before the ALJ issued her decision, and thus FNP Marcucilli described Plaintiff's impairments and treatment during the period at issue.

The Commissioner does not expressly concede that FNP Marcucilli's statement described Plaintiff's impairments and treatment from the period at issue. The Commissioner, however, did not defend the Appeals Council's reason or respond to Plaintiff's arguments challenging this reason. Accordingly, the Commissioner has waived any argument that the Appeals Council

provided for not considering FNP Marcucilli's statement. *See, e.g.*, *Megan S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error"); *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the Commissioner's failure to defend the ALJ's assessment on certain grounds waived those issues).

Because the Appeals Council's reason for not considering FNP Marcucilli's statement has been waived, the Court considers the statement in determining whether the ALJ's decision is supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012) ("[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."); *see also Lingenfelter*, 504 F.3d at 1030 n.2 (noting that when the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the new evidence submitted to the Council). FNP Marcucilli's new statement reflected her belief that Plaintiff would have needed to "lie down or rest periodically during the day" because of her impairment. AR 16. The parties dispute, however, the effect of this evidence on the Court's evaluation of the ALJ's decision.

The Commissioner argues that there are other more persuasive medical opinions in the record that support the ALJ's decision and that FNP Marcucilli's statement does not reasonably raise the possibility of a changed outcome of the ALJ's decision. Plaintiff argues, however, that

FNP Marcucilli's statement that Plaintiff would need to lie down or rest periodically throughout the workday further shows that the ALJ's decision is not supported by substantial evidence. The Court finds Plaintiff's argument persuasive. FNP Marcucilli's statement clarifies Plaintiff's need to rest throughout the workday, which the other medical opinions did not expressly consider. *See* AR 85-97, 98-110, 113-25, 126-36, 864. This clarification reasonably raises the possibility of a changed outcome of the ALJ's disability determination. FNP Marcucilli also opines regarding Plaintiff's condition post-surgery, and the ALJ relied on Plaintiff's improvement from surgery to discount Plaintiff's limitations, making FNP Marcucilli's opinion potentially important.

### D. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether it is fully developed and free from conflicts and ambiguities, and whether there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider

whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, there are outstanding conflicts and ambiguities. The ALJ needs to properly evaluate the testimony of Plaintiff and the lay witness, particularly with the benefit of FNP Marcucilli's opinion supporting the ineffectiveness of Plaintiff's back surgery. There are also ambiguities with how the ALJ would evaluate FNP Marcucilli's answer to the question that Plaintiff would need to rest or lie down and whether that would result in Plaintiff being off task for a portion of the workday or workweek. Thus, the Court remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 7th day of March, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge